# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **LEN WILLIAM MAY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 7:15-CV-2297-VEH** |
| | ) |
| **NANCY A. BERRYHILL, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant**. | ) |

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Len William May ("Mr. May") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"),[1] who denied his application for Disability Insurance Benefits

---

[1]  Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2] Mr. May timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3] For the following reasons, the Court **REVERSES** and **REMANDS** the Commissioner's decision for further consideration in accordance with this opinion.

### STATEMENT OF THE CASE

Mr. May was 47 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). Tr. 39, (Doc. 18 at 4). He has completed the tenth grade. Tr. 183. His past work experience includes employment as a laborer. Tr. 26. He claims he became disabled on March 19, 2009, due to his "previous broken leg with swelling" and his history as an alcoholic. Tr. 201. His last period of work ended on June 30, 2011. Tr. 201.

On April 22, 2013, Mr. May protectively filed a Title II application for a period of disability and DIB. Tr. 19. He also protectively filed a Title XVI application for SSI on that date. *Id.* On July 2, 2013, the Commissioner initially denied these claims.

---

[2]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

*Id.* Mr. May timely filed a written request for a hearing on July 23, 2013. *Id.* The ALJ conducted a hearing on the matter on September 10, 2014. *Id.* On February 7, 2015, the ALJ issued his opinion, concluding Mr. May was not disabled and denying him benefits. Tr. 16-28. Mr. May timely petitioned the Appeals Council to review the decision on March 4, 2015. Tr. 14. On November 5, 2015, the Appeals Council issued a denial of review on his claim. Tr. 1-6.

Mr. May filed a Complaint with this Court on December 21, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on April 28, 2016. (Doc. 15). Mr. May filed a supporting brief (doc. 18) on June 3, 2016, and the Commissioner responded with her own (doc. 21) on August 4, 2016.

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support

a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the Court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the Court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

4

disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)   whether the claimant can perform his or her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her

5

work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

### ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.   Mr. May met the insured status requirements of the Social Security Act through March 31, 2013.

2.   He had not engaged in substantial gainful activity since March 19, 2009, the alleged disability onset date.

3.   He had the following severe impairments: status post right ankle fracture (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.   He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.   He had the residual functioning capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).

6.      He was unable to perform past relevant work.

7.      He was born on [redacted], 1967 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability date.

8.      He had a limited education and was able to communicate in English.

9.      Transferability of job skills was not material to the determination of disability because the claimant did not have past relevant work (20 C.F.R. §§ 404.1568 and 416.968).

10.     Considering his age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform.

11.     Mr. May had not been under a disability, as defined in the Social Security Act, from March 19, 2009, through the date of this decision.

Tr. 21-27.

## DISCUSSION

The Court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)). However, the Court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. May urges this Court to reverse the Commissioner's decision to deny his benefits on two grounds: (1) the ALJ's RFC assessment is not supported by substantial evidence, and (2) the ALJ did not obtain proper testimony from a vocational expert ("VE") as to jobs that exist in significant numbers in the national economy. (Doc. 18).

### A.   The ALJ's RFC Determination Is not Supported by Substantial Evidence

Mr. May first agues that the ALJ failed to give proper weight to the medical source statement completed by the consultative examiner, Dr. Richard Rex Harris ("Dr. Harris"), in determining that Mr. May had an RFC to perform a full range of sedentary work. (Doc. 18 at 6-7). Specifically, Mr. May disputes the ALJ's decision to partially adopt and partially reject the opinion of Dr. Harris while claiming to give it significant weight. *Id.* at 7.

In determining whether a claimant can perform past relevant work or other work in the economy, an ALJ must determine the claimant's RFC by considering all relevant medical evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). While the ALJ "may reject the opinion of any physician when the evidence

8

supports a contrary conclusion," the ALJ must "state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006)[5] (citing *Bloodsworth*, 703 F.2d at 1240). Without this explanation, a reviewing court cannot determine whether the ALJ's decision was supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

"In evaluating medical opinions, the ALJ considers factors such as the examining relationship, the treating relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 985 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Generally, treating physician opinions are given more weight than non-treating physician opinions, and examining physician opinions are afforded more weight than non-examining physicians. *Id.* at 986; *see also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) ("Generally, a treating doctor's opinion is entitled to more weight than a consulting doctor's.") (citations omitted).

At the hearing on September 10, 2014, the ALJ noted that he was in possession

---

[5] In the Eleventh Circuit, unpublished decisions are not binding precedent, but they may be cited as persuasive authority. 11th Cir. R. 36-2.

of a report that was labeled as an internal medicine report but which was actually a psychological report. Tr. 60. Accordingly, the ALJ sent Mr. May to receive a consultative examination ("CE"), since his last examination occurred in June 2013, over a year prior to the ALJ hearing. Tr. 60-61.

On October 9, 2014, Dr. Harris, a board certified orthopaedic surgeon, examined Mr. May at the Social Security Administration's request. Tr. 338-347. After conducting a physical examination, Dr. Harris completed a Medical Source Statement ("MSS"), which was submitted to the ALJ and included as part of the considered record. Tr. 32. In an accompanying letter, Dr. Harris opined:

1.    "There is full range of motion of the hips, knees, and left ankle. There is decreased dorsiflexion, plantar flexion, eversion, and inversion of the right ankle. There are well healed scars on the right ankle. Neuro circulation intact. Toe extensors are normal."

2.    "The claimant walks with a limp favoring the right lower extremity. The claimant can toe and heel walk with difficulty with the right ankle and foot."

3.    "It is my medical opinion that this claimant is status post fracture right ankle post-surgery with residuals. It is my medical opinion that this claimant is capable of sedentary work in the work place."

Tr. 339. Regarding Dr. Harris's evaluation, the ALJ stated:

The report of consultative examiner, Dr. Richard Rex Harris, dated October 2014, also shows the claimant had full range of the hips, knees, and left ankle. There was decreased dorsiflexion, plantar flexion, eversion, and inversion of the right ankle, but the claimant was

neurologically intact. Toe extensors were normal. Reflexes were one plus and equal in the upper and lower extremities. The claimant walked with a limp favoring the right lower extremity, but he could toe and heel walk with difficulty with the right ankle and foot. Dr. Harris diagnosed status post fracture right ankle and post-surgery with residuals and opined the claimant was capable of sedentary work in the work place (Exhibit 9F).

Tr. 25. The ALJ later clarified the weight given to Dr. Harris's consultative examination:

> Significant weight is assigned to the opinion of Dr. Harris that the claimant can perform sedentary work (Exhibit 9F). This opinion is consistent with the residual functional capacity, his examination findings, and the other medical evidence of record. Dr. Harris also completed a medical source statement indicating in an eight hour workday, the claimant could occasionally lift and carry up to 20 pounds; sit one to two minutes at one time for a total of four hours; stand one minute at one time for a total of three hours; and walk five minutes at one time for a total of one hour. He stated the claimant did not require the use of a cane to ambulate and could ambulate 80 feet without the use of a cane (Exhibit 9F). Significant weight is also assigned to this medical source statement, except the record does not support a finding that the claimant needs to alternate positions every one to two minutes.

Tr. 26 (emphasis added).

After according significant weight to the majority of Dr. Harris's opinion, including his medical source statement that Mr. May could only sit for one to two minutes at one time *for a total of four hours*, the ALJ nonetheless concluded that Mr. May had the RFC to perform a full range of sedentary work, without any stated limitations within that exertional category. Sedentary work is defined as follows:

11

(a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567; SSR 83-10, 1983 WL 31251, at *5. "Occasionally" is defined as "occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, *periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8 hour-workday*." SSR 83-10, 1983 WL 31251, at *5 (emphasis added).

Mr. May argues that Dr. Harris's medical source opinion is "not consistent with a full range of sedentary work" because "the restriction to four hours sitting alone is not consistent with the basic exertional requirement of 6 hours sitting for sedentary work[.]" (Doc. 18 at 6). Instead, Mr. May contends that Dr. Harris's opinion is "consistent at best with a reduced range of sedentary work with an opportunity for alternate sitting and standing with the full range of additional postural and environmental limitations." *Id.*

The Court agrees that, based upon the MSS to which the ALJ accorded substantial weight, Mr. May is not able to perform the full range of sedentary work.

SSR 83-10 requires, at a minimum, the ability to sit for approximately *six* hours of an eight hour day. However, Dr. Harris opined that Mr. May could only sit for up to *four* hours in an eight hour workday, and the ALJ did not discredit this portion of Dr. Harris's opinion. Rather, he explicitly gave it substantial weight. Tr. 26.

Furthermore, the ALJ's only reason for partially discounting Dr. Harris's opinion, specifically relating to Mr. May's need to alternate positions every one to two minutes, was because the record did not support such a finding. Tr. 26. Yet the ALJ failed to point to specific evidence in the record that contradicted Dr. Harris's opinion or provide any further explanation for his reasoning. Particularly given that the ALJ did accord substantial weight to Dr. Harris's overall opinion, he should have provided greater support for his decision to discount Dr. Harris's "alternating positions" opinion. Accordingly, the ALJ's RFC finding that Mr. May can perform a full range of sedentary work is not supported by substantial evidence.

## B.   Lack of Necessary Vocational Expert Testimony

Mr. May next argues that "the ALJ did not obtain testimony from a VE that would help to identify jobs that could be performed with these restrictions, nor take any testimony at all from the VE." (Doc. 18 at 6). The Commissioner did not respond to this argument. (Doc. 21).

At the start of the ALJ hearing on September 10, 2014, the ALJ introduced

13

himself, explained the format of the hearing, and then introduced the hearing reporter

and the vocational expert, Dr. Mary Kessler. Specifically, the ALJ stated:

> ALJ: To my left and to your right is Dr. Mary Kessler. She's a
> vocational expert. She has training, information and knowledge about
> jobs, including what skill level it takes to do different jobs, what
> exertion levels they require and information on how many jobs exist in
> the region and in the nation.
>
> I'm going to ask her some questions. I'll describe to her some
> individuals with different levels of function and ask her if there's any
> jobs those hypothetical individuals I described could do. I'm going to try
> to describe to her, within one of my questions, someone who has what
> we call a residual functional capacity that I believe the evidence shows
> you possess.
>
> By residual functional capacity it means what's the most you can
> do in competitive work activity despite your impairments such as how
> much you can lift and carry, how long you can stand and walk, maintain
> attention and concentration and et cetera. When I've completed my
> questions, your counsel will be given an opportunity to ask questions
> also. When he's done with his questions, that's basically the hearing.

Tr. 37-38. After the oath was administered, Mr. May's attorney made opening

remarks and proceeded to examine his client. Tr. 39-58. The ALJ also asked Mr. May

several questions to supplement the record. Tr. 58-60. The hearing then concluded as

follows:

> ALJ:  I don't have any other questions for you. Anything else, counsel?
>
> Atty:  No. No, Judge.
>
> ALJ:  <u>Do you want to ask the vocational expert any</u>?

Atty:  <u>No, Judge</u>.

ALJ:  Do you want to make a closing argument?

Atty: No, Your Honor.

ALJ: Mr. May, anything we didn't ask you about you want me to know about?

Clmt: No, sir.

ALJ: We've got a report here that's labeled as an internal medicine report, but I think it's a psychological report.

Atty: I think it is too, Judge, and I –

ALJ: And we – so I'm going to, you know, propose ortho [phonetic] to see –

Atty: I understand.

ALJ: And see what's going on with that.

Atty: Fine, Judge.

ALJ:  We're going to send you out to see a Social Security contract doctor and then they'll prepare a report . . .

. . . .

ALJ:  Well, I'm just letting you know, we're going to have to send you out to see somebody like that again . . . and they're going to . . . do an examination . . . and prepare a report for us.

Clmt: Yes, sir.

ALJ: When I get the report I'll . . . share it with your attorney and then

15

add it to the record and he'll have an opportunity to comment on it and if it discloses anything that makes it look like we might need more information, we could have a supplementary hearing if we need or we'll make a decision after that report is prepared. We'll see.

Clmt: Yes, sir.

ALJ:  Okay.

Atty: Thank you, Judge. Let's go outside.

ALJ:  The hearing's closed.

Tr. 60-62 (emphasis added). Accordingly, on October 9, 2014, Dr. Harris completed an evaluation of Mr. May. Tr. 338-47.

On October 15, 2014, the ALJ sent Mr. May's counsel a letter, notifying him that he proposed entering Dr. Harris's consultative examination into the record. Tr. 228-29. First, the letter notified Mr. May that he could submit written comments, a written statement of applicable law and fact, any additional records the claimant wished the ALJ to consider, or written questions to be sent to Dr. Harris. Tr. 228. Second, the letter stated that Mr. May had the right to request a supplemental hearing in order to appear, testify, produce witnesses, submit additional evidence, or provide written or oral statements concerning the facts or law. *Id.* If Mr. May did request the supplemental hearing, the letter stated that the ALJ would grant the request unless he received "additional records that support a fully favorable decision." *Id.* Third, the

letter stated that Mr. May could request that the ALJ "issue a subpoena to require the attendance of witnesses or the submission of records" at the supplemental hearing. *Id.*

Finally, the letter stated that if the ALJ did not receive a response within ten days, he would "assume that you do not wish to submit any written statements or records and that you do not wish to request a supplemental hearing or to orally question the author(s) of the enclosed report(s)." Tr. 229. The ALJ would then "enter the enclosed evidence in the record and issue [his] decision." *Id.* There is no evidence in the record that Mr. May submitted any additional statements or records for consideration or requested a supplemental hearing.

On February 7, 2015, the ALJ issued his decision, determining that Mr. May was unable to perform past relevant work. Tr. 19-28. In step four, the ALJ determined:

> The vocational expert testified that given the claimant's [RFC], he is able to perform his past work as a laborer. The undersigned accepts the testimony of the vocational expert. In comparing the mental and physical demands of the claimant's past relevant work with the claimant's [RFC], the undersigned finds that the claimant is not able to perform past relevant work.

Tr. 26 (emphasis added). In step five, the ALJ relied on Medical-Vocational Rule 201.24, in the Medical-Vocational Guidelines, to determine that based on an RFC for

a full range of sedentary work, and considering Mr. May's age, education, and work experience, he was not under a disability from the onset date through the date of the ALJ's decision. Tr. 27.

On August 17, 2015, Mr. May submitted a memorandum in support of his petition to the Appeals Council to review the ALJ's decision . Tr. 233-35. In the memorandum, Mr. May argued as follows regarding the lack of VE testimony:

> 1. "Mr. May was forty-seven at the time of the ALJ decision with a limited education and past relevant work as a laborer which he is no longer able to perform. The ALJ maintained that the vocational expert (VE) so testified (ALJ Decision page 8). However, the VE was not asked any questions at the hearing even as to job classification, as indicated by the ALJ's notation that the VE merely appeared at the hearing (ALJ Decision page 1)."

> 2. "The ALJ did not obtain testimony from a VE that would help to identify jobs that could be performed with these restrictions, nor take any testimony at all from the VE."

> 3. "The ALJ erred in failing to take VE testimony . . . ."

*Id.* Mr. May makes the same argument, albeit briefly, in his brief. (Doc. 18 at 6). The Court must therefore resolve whether VE testimony was required and, if so, whether it was properly relied upon in this case.

The ALJ has the obligation of developing both a full and fair record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558 (citing *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) and *Welch v. Bowen*, 854

F.2d 435, 440 (11th Cir. 1988)). In step five, as the Eleventh Circuit has explained,

the ALJ has two options:

> "There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy." *Phillips*, 357 F.3d at 1239. First, the ALJ may apply the Medical Vocational Guidelines, commonly known as "the grids," found in 20 C.F.R. § 404, subpart P, appendix 2. Second, the ALJ may consult a vocational expert, or VE, by posing hypothetical questions to the VE to establish whether someone with the claimant's impairments would be able to find employment. *Id.* at 1239–40.

> The grids provide tables based on work classifications of sedentary, light, medium, heavy or very heavy. These classifications are based on the exertional level, or "primary strength activities," the work requires, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. S.S.R. 83–10. Each table considers vocational factors, such as age, education and work experience, to "direct a conclusion" of either disabled or not disabled. *See generally*, 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). These tables constitute "administrative notice" as to the number of unskilled jobs that exist in the national economy at the various exertional levels. Thus, when all the claimant's vocational factors coincide with the criteria in the table, "the existence of jobs is established." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b).

> This Court repeatedly has recognized that "exclusive reliance on the grids is not appropriate either": (1) "when the claimant is unable to perform a full range of work at a given residual functional level"; or (2) "when a claimant has non-exertional impairments [i.e., impairments not related to strength] that significantly limit basic work skills." *See Phillips*, 357 F.3d at 1242 (internal brackets omitted); *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir.1989); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). In either of these cases, the claimant's occupational base (the number of jobs he is able to perform based on his RFC, age, education and work experience) may be affected. *See* S.S.R. 83–12 (explaining that when a claimant's exertional limitations do not

coincide with a particular exertional level in the grids, the adjudicator may need to consult a vocational expert to determine the extent of any erosion in the occupational base); S.S.R. 83–14 (explaining that when nonexertional impairments are present, the occupational base may be significantly narrowed and the ALJ may need to consult a vocational expert). Thus, in these kinds of cases, the ALJ must make an individualized assessment and consult a VE to determine whether there are jobs in the economy the claimant can perform. *See Phillips*, 357 F.3d at 1242–43.

*Watson v. Astrue*, 376 F. App'x 953, 956-57 (11th Cir. 2010).

In this case, the ALJ committed reversible error by relying exclusively on the Medical-Vocational Guidelines (the "Grids") in step five, rather than the testimony of a VE. Based on Dr. Harris's consultative examination and his MSS, Mr. May does not fit squarely into the sedentary job classification. Accordingly, the ALJ should have relied on the testimony of a vocational expert in determining whether there is work that Mr. May can still perform. *Phillips*, 357 F.3d at 1242; SSR 83-12, 1983 WL 311253, at *2 ("Where the extent of the occupational base is not clear, the adjudicator will need to consult a vocational resource."). SSR 83-12 also specifies that when the individual has a need to alternate sitting and standing, a vocational expert is particularly necessary:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for some time, but must then get up and stand or walk for awhile before returning to sitting. Such an

20

individual is not functionally capable of doing either the prolonged
sitting contemplated in the definition of sedentary work (and for the
relatively few light jobs which are performed primarily in a seated
position) or the prolonged standing or walking contemplated for most
light work (Persons who can adjust to any need to vary sitting and
standing by doing so at breaks, lunch periods, etc., would still be able to
perform a defined range of work.)[.]

There are some jobs in the national economy – typically
professional and managerial ones – in which a person can sit or stand
with a degree of choice. If an individual had such a job and is still
capable of performing it, or is capable of transferring work skills to such
jobs, he or she would not be found disabled. However, most jobs have
ongoing work processes which demand that a worker be in a certain
place or posture for at least a certain length of time to accomplish a
certain task. Unskilled types of jobs are particularly structured so that a
person cannot ordinarily sit or stand at will. In cases of unusual
limitation or ability to sit or stand, a VS should be consulted to clarify
the implications for the occupational base.

SSR 83-12,  1983 WL 311253 at *4 (emphasis added).

Though the ALJ's analysis references vocational expert testimony, this

testimony does not appear in the record. Tr. 26. The VE was not asked any questions

at the hearing, including any questions as to job classification. Had the only issue

before the Court been whether the vocational expert testified at all, this might have

been harmless error because the ALJ claimed he did not rely on the VE's assessment

of Mr. May's capacity to perform past relevant work in determining whether or not

Mr. May was disabled. *Cf*. Tr. 26 ("The vocational expert testified that . . .  he is able

to perform his past work as a laborer.") *with id.* ("In comparing the mental and

21

physical demands of the claimant's past relevant work with the claimant's residual functioning capacity, the undersigned finds that the claimant is <u>not able</u> to perform past relevant work."). In so finding, the ALJ actually made a determination in Mr. May's favor. However, in this case, vocational expert testimony was required because the record does not reflect that Mr. May could perform a full range of sedentary work.

Accordingly, the Court finds that the ALJ committed reversible error by relying on the Grids, rather than the testimony of a vocational expert, when the medical evidence available in the record demonstrates that Mr. May was not able to perform a full range of work at a given exertional level.

## CONCLUSION

Based upon the Court's evaluation of the evidence in the record and the parties' submissions, the Court finds that the Commissioner did not apply proper legal standards in reaching her final decision. Accordingly, the decision will be reversed and remanded by separated order.

**DONE** this the 15th day of March, 2017.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge